# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN C. RONCA, CYNTHIA RONCA, and JOSEPH RONCA,<br><br>Defendants. | Case No. 2:17-cv-08044-ODW (FFMx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [35]** |

## I.  INTRODUCTION

The United States of America (the "Government") brings two claims against Defendants Stephen Ronca ("Stephen"), Cynthia Ronca ("Cynthia"), and Joseph Ronca ("Joseph") (collectively, "Defendants") under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq*. The Government files this civil action to recover proceeds from the sale of real property on October 26, 2017 to satisfy a restitution debt. (Compl. ¶ 1.)

Defendant Cynthia moves to dismiss on the grounds that the Government failed to: (1) serve Cynthia in a timely manner; (2) state a claim; and (3) join the escrow

company under Rule 19. (*See generally* Mot. to Dismiss Compl. ("Mot."), ECF No. 35.)[1]

For the reasons that follow, the Court **DENIES** Defendant's Motion to Dismiss.

## II. BACKGROUND

This is an action to recover proceeds of a real property sale to satisfy restitution owed by Stephen Ronca for embezzling money. (Compl. ¶ 9.) Stephen, Cynthia, and Joseph are siblings. (Compl. ¶¶ 5–7.) Stephen is a licensed attorney. (Compl. ¶ 9.) On May 30, 2017, the Government filed an indictment against Stephen for embezzling money from his client.[2] (Compl. ¶ 9.)

The real property in issue is located at 625 Al-Hil Drive, San Luis Obispo, CA 93405 ("Al-Hil Property"). (Compl. ¶ 10.) In February 2008, Stephen became the sole owner of the Al-Hil Property through two grant deeds. (Compl. ¶ 11.) In the first grant deed, John Ronca, father of the Defendants, transferred half of the interest to Stephen and half to his revocable trust. (Compl. Ex. A, ECF No. 1-1.) Three weeks later, John Ronca transferred the half interest in his trust to Stephen through a second deed. (Compl. Ex. B, ECF No. 1-1.)

On October 26, 2017, Stephen sold the Al-Hil Property to "Trustees of the Shotts Living Trust dated August 22, 2000" for a net proceed of $394,560.97, which was deposited in Cynthia's account. (Compl. ¶¶ 12–14.) The following day, Cynthia withdrew three cashier's checks in the amount of $100,000, $111,500, and $150,700. (Compl. ¶ 15.) Cynthia deposited the checks in the amount of $100,000 and $111,500 in two separate bank accounts under her name. (Compl. ¶ 16.) She then immediately withdrew $100,000 from the account in which she had deposited the $100,000 check. (Compl. ¶ 16.) Cynthia gave Joseph the third check in the amount of $150,700.

---

[1] Having carefully considered the papers filed in connection to the instant Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.
[2] When the Government filed the Complaint, the related criminal matter was not resolved. Since then, Stephen was sentenced and ordered to pay restitution of $483,411 pursuant to the Mandatory Victims Restitution Act. (Opp'n to Mot. ("Opp'n") 3, ECF No. 46.)

2

(Compl. ¶ 17.)

On November 3, 2017, the Government brought suit against Defendants alleging fraudulent transfers of funds pursuant to 28 U.S.C. §§ 3304(b)(1)(A) & (b)(1)(B). (*See* Compl.) From December 13, 2017 to January 16, 2019, this civil action was stayed pending resolution of the criminal matter. (*See* Order Regarding Deposit of Funds into the Ct.'s Registry, ECF No. 12; Order Lifting Stay, ECF No. 21.) On May 7, 2019, Defendant Cynthia filed a motion to dismiss. (*See* Mot.)

### III. LEGAL STANDARD

**A. 12(b)(5)**

Under Federal Rule of Civil Procedure ("Rule") 12(b)(5), a party may seek dismissal of a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "Once service is challenged, [the] plaintiff[] bear[s] the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

**B. 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the

pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiffs pleading fraud must do so with heightened particularity. *See* Fed. R. Civ. P. 9(b). Rule 9(b) establishes that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." The "circumstances" required by Rule 9(b) are the "who, what, when, when, where, and how" of the fraudulent activity. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id*. This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

When a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend, however, "is properly denied . . . if amendment would be futile." *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

**C.     12(b)(7)**

Under Rule 12(b)(7), a party may seek dismissal of a complaint for failure to join an indispensable party under Rule 19. Fed. R. Civ. P. 12(b)(7). Rule 19 states "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19. If joinder is not feasible, "the court must determine whether, in equity and good

conscience, the action should proceed among the existing parties or should be dismissed." *Id*.

## IV. DISCUSSION

### A. Timely Service of Process

Defendant Cynthia alleges that the Government failed to timely serve process and therefore, moves to dismiss the claim against her. (Mot. 3.) Rule 4 states:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. *But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.*

Fed. R. Civ. P. 4(m) (emphasis added). A showing of good cause under Rule 4(m) means, "[a]t a minimum ... 'excusable neglect,'" and may also require a showing of the following three factors: "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1186 (C.D. Cal. 2015) (citing *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir.1991)).

Excluding the stay, the Government served Cynthia 131 days after it filed the Complaint. (Mot. 4.) The Government states that it diligently attempted to serve process at various locations between November 8, 2017 and December 1, 2017 and also after the stay was lifted. (Opp'n 3, 4.) The Government attempted to serve process at three separate addresses on six different dates without success. (Decl. of Indira J. Cameron-Banks, ECF No. 46-1.) On April 18, 2019, the Government finally served process on Cynthia, while she attended a family court hearing. (Decl. of Indira J. Cameron-Banks.) As Cynthia seems to have personal notice of the case and the Government has made diligent efforts to serve process, the Government shows good cause for the failure to serve within 90 days. *See Hendry v. Schneider*, 116 F3d 446, 449 (10th Cir. 1997) (finding defendant's evasion of service constituted "good cause"

for delay in effecting service). Thus, the Court must extend the time for service per Rule 4(m).

Accordingly, Cynthia was properly served on April 18, 2019 and the Court **DENIES** Cynthia's Motion on this basis.

**B.     Federal Debt Collection Procedures Act**

The Federal Debt Collection Procedures Act ("FDCPA") forbids fraudulent transfers to avoid satisfaction of a debt to the United States "whether such debt arises before or after the transfer is made." 28 U.S.C. § 3304(b)(1). Under section (b)(1)(A), a transfer is fraudulent, "if the debtor makes the transfer . . . with actual intent to hinder, delay, or defraud a creditor." *Id*. Alternatively, a transfer is fraudulent under section (b)(1)(B) "if the debtor makes the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer" and either was engaged in "a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or intended to incur "debts beyond his ability to pay as they became due." *Id.* In determining actual intent, the Court may consider whether:

> (A) the transfer or obligation was to an insider;
> (B) the debtor retained possession or control of the property transferred after the transfer;
> (C) the transfer or obligation was disclosed or concealed;
> (D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (E) the transfer was of substantially all the debtor's assets;
> (F) the debtor absconded;
> (G) the debtor removed or concealed assets;
> (H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b)(2). The government claims a violation of both subsection (b)(1)(A) and (b)(1)(B).

Cynthia's primary argument is that Defendants are mere recipients of the funds and that the Government fails to provide facts to allow the Court to infer that the Defendants were involved in a fraudulent transfer. (Mot. 5.) However, the Government in its Complaint established a string of transactions that could plausibly establish a violation of the FDCPA. For example, the Government alleges that Cynthia received $394,560.97 in her account, withdrew three cashier's checks in the amount of $100,000, $111,500, and $150,700, and deposited the checks in the amount of $100,000 and $111,500 in two of her bank accounts, but immediately withdrew $100,000 from the account in which she had deposited the $100,000 check. (Compl. ¶¶ 12–17.) Cynthia then gave Joseph the third check in the amount of $150,700. (Compl. ¶ 17.) The scenario is not as Cynthia alleges—that Defendants received cash from the escrow company and were not involved in any transfer of funds. (Mot. 5.) Thus, the Court finds that Cynthia plausibly made the transfers "with actual intent to hinder, delay, or defraud a creditor." *See United States v. LeBeau*, No. 17CV1046-GPC(WVG), 2017 WL 6270474, at *6 (S.D. Cal. Dec. 8, 2017) (finding the plaintiff alleged sufficient facts when it alleged two spouses transferred the property back and forth to each other without adequate consideration); *United States v. Crisp*, 190 F.R.D. 546, 548–555 (E.D. Cal. 1999) (finding the government alleged facts sufficient to satisfy elements of 28 U.S.C. § 3304(b) by pleading that defendants' transfer of real property from two individuals to a limited partnership was fraudulent).

Accordingly, the Court **DENIES** the Motion as to this claim.

C. **Indispensable Party**

Cynthia argues that by failing to join the escrow company that disbursed the funds into her account, the Government failed to join an indispensable party.

(Mot. 6.) Under Rule 19 section (a), the Court must first determine if the escrow company, the non-party or absentee, is a person required to be joined. *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). Only if the Court determines the absentee is required must the Court consider whether joinder is feasible. *Id.* An absentee is necessary either if the Court "cannot accord complete relief among the existing parties" or if the absentee "claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(A) & (a)(1)(B).

Here, Cynthia and her siblings are in complete possession of the net proceeds that the Government seeks. Thus, despite Defendants' frustration that the escrow company was not joined, the Court can accord complete relief among the existing parties. *See Eldredge v. Carpenters 46 N. Cal. Ctys. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir.1981) (applying "complete relief" only to "persons already parties, not as between a party and the absent person whose joinder is sought"); *Hoang v. Vinh Phat Supermarket, Inc.*, No. 2:13-cv-00724 WBS, 2013 WL 4095042, at *16 (E.D. Cal. Aug. 13, 2013) (finding that the court could accord complete relief between the named parties despite the individual defendants' frustration that other fellow shareholders were not joined in the suit).

Furthermore, since the escrow company relinquished the funds in question upon completion of the real property sale, the escrow company has no interest relating to the subject of the action. Moreover, the escrow company has not asserted any interest in the funds at issue. *See Soto v. Los Angeles Cty. Flood Control Dist.*, No.15-cv-787 FFM, 2016 WL 11265023, at *3 (C.D. Cal. May 24, 2016) (finding that where a party does not assert an interest relating to the subject of the action the subsection does not apply). Therefore, the escrow company is not a necessary party.[3]

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss for failure to join an indispensable party.

---

[3] Since the Court does not find that the escrow company is a necessary party, the Court does not address whether joinder would be feasible.

## IV. CONCLUSION

For the reasons provided above, the Court **DENIES** Defendant's Motion. Within fourteen days from this Order, Defendant must file an answer to the Complaint.

**IT IS SO ORDERED.**

October 25, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**