O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN C. RONCA, CYNTHIA RONCA, and JOSEPH RONCA,<br><br>Defendants. | Case No. 2:17-cv-08044-ODW (FFMx)<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS [52, 55]** |

## I.   INTRODUCTION

The United States of America (the "Government") brings two claims against Defendants Stephen Ronca ("Stephen"), Cynthia Ronca ("Cynthia"), and Joseph Ronca ("Joseph") (collectively, "Defendants") under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq*. The Government files this civil action to recover proceeds from the sale of real property on October 26, 2017 to satisfy a restitution debt. (Compl. ¶ 1.)

Defendants Stephen and Joseph move to dismiss on the grounds that the Government failed to: (1) state a claim; and (2) join the escrow company under Federal Rule of Civil Procedure ("Rule") 19. (*See generally* Mot. to Dismiss Compl.

("Stephen Mot."), ECF No. 52.; Mot. to Dismiss Compl. ("Joseph Mot."), ECF No. 55)[1]

For the reasons that follow, the Court **DENIES** Defendants' Motions to Dismiss.

## II. BACKGROUND

This is an action to recover proceeds of a real property sale to satisfy restitution owed by Stephen Ronca for embezzling money.[2] (Compl. ¶ 9.) Stephen, Cynthia, and Joseph are siblings. (Compl. ¶¶ 5–7.) Stephen is a licensed attorney. (Compl. ¶ 9.) On May 30, 2017, the Government filed an indictment against Stephen for embezzling money from his client.[3] (Compl. ¶ 9.)

The real property in issue is located at 625 Al-Hil Drive, San Luis Obispo, CA 93405 ("Al-Hil Property"). (Compl. ¶ 10.) In February 2008, Stephen became the sole owner of the Al-Hil Property through two grant deeds. (Compl. ¶ 11.) In the first grant deed, John Ronca, father of the Defendants, transferred half of the interest to Stephen and half to his revocable trust. (Compl. Ex. A, ECF No. 1-1.) Three weeks later, John Ronca transferred the half interest in his trust to Stephen through a second deed. (Compl. Ex. B, ECF No. 1-1.)

On October 26, 2017, Stephen sold the Al-Hil Property to "Trustees of the Shotts Living Trust dated August 22, 2000" for a net proceed of $394,560.97, which was deposited in Cynthia's account. (Compl. ¶¶ 12–14.) The following day, Cynthia withdrew three cashier's checks in the amount of $100,000, $111,500, and $150,700. (Compl. ¶ 15.) Cynthia deposited the checks in the amount of $100,000 and $111,500 in two separate bank accounts under her name. (Compl. ¶ 16.) She then immediately

---

[1] Having carefully considered the papers filed in connection to the instant Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] When the Government filed the Complaint, the related criminal matter was not resolved. Since then, Stephen was sentenced and ordered to pay restitution of $483,411 pursuant to the Mandatory Victims Restitution Act. (Opp'n to Stephen Mot. ("Opp'n") 1, ECF No. 57.)

[3] In his Motion, Stephen indicates that all Defendants request the Court to take judicial notice of the indictment filed against Stephen. (Mot. 3.) As the Complaint contains all facts pertinent to disposition of this motion, the Court **DENIES** Defendant's request.

withdrew $100,000 from the account in which she had deposited the $100,000 check. (Compl. ¶ 16.) Cynthia gave Joseph the third check in the amount of $150,700. (Compl. ¶ 17.)

On November 3, 2017, the Government brought suit against Defendants alleging fraudulent transfers of funds pursuant to 28 U.S.C. §§ 3304(b)(1)(A) & (b)(1)(B). (*See* Compl.) From December 13, 2017 to January 16, 2019, this civil action was stayed pending resolution of the criminal matter. (*See* Order Regarding Deposit of Funds into the Court's Registry, ECF No. 12; Order Lifting Stay, ECF No. 21.) On August 27, 2019, Defendants Stephen and Joseph filed motions to dismiss. (*See* Stephen Mot.; Joseph Mot.)

### III. LEGAL STANDARD

**A. 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory

allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiffs pleading fraud must do so with heightened particularity. *See* Fed. R. Civ. P. 9(b). Rule 9(b) establishes that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." The "circumstances" required by Rule 9(b) are the "who, what, when, when, where, and how" of the fraudulent activity. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id*. This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

When a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend, however, "is properly denied . . . if amendment would be futile." *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

**B. 12(b)(7)**

Under Rule 12(b)(7), a party may seek dismissal of a complaint for failure to join an indispensable party under Rule 19. Fed. R. Civ. P. 12(b)(7). Rule 19 states "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19. If joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id*.

## IV. DISCUSSION

**C. Federal Debt Collection Procedures Act**

The Federal Debt Collection Procedures Act ("FDCPA") forbids fraudulent transfers to avoid satisfaction of a debt to the United States "whether such debt arises before or after the transfer is made." 28 U.S.C. § 3304(b)(1). Under section (b)(1)(A), a transfer is fraudulent, "if the debtor makes the transfer . . . with actual intent to hinder, delay, or defraud a creditor." *Id*. Alternatively, a transfer is fraudulent under section (b)(1)(B) "if the debtor makes the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer" and either was engaged in "a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or intended to incur "debts beyond his ability to pay as they became due." *Id*. In determining actual intent, the Court may consider whether:

    (A) the transfer or obligation was to an insider;
    (B) the debtor retained possession or control of the property transferred after the transfer;
    (C) the transfer or obligation was disclosed or concealed;
    (D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
    (E) the transfer was of substantially all the debtor's assets;
    (F) the debtor absconded;
    (G) the debtor removed or concealed assets;
    (H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
    (I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
    (J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
    (K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b)(2). The government claims a violation of both subsection (b)(1)(A) and (b)(1)(B).

### 1. Defendant Stephen

#### a. 28 U.S.C. § 3304(b)(1)(A)

Stephen's primary argument is that the Government fails to show how receiving proceeds in Cynthia's account amounted to a fraudulent transfer. (Stephen Mot. 6.) However, the Government in its Complaint established a string of transactions that could plausibly establish a violation of the FDCPA. For example, the Government alleges that Cynthia received $394,560.97 into her account and withdrew $100,000, $111,500, and $150,700 via cashier's checks. The Government further alleges that Cynthia deposited the checks in the amount of $100,000 and $111,500 into two of her bank accounts, but immediately withdrew $100,000 from the account in which she had deposited the $100,000 check. (Compl. ¶¶ 12–17.) Cynthia then gave Joseph the third check in the amount of $150,700. (Compl. ¶ 17.) The scenario is not as Stephen alleges—that Cynthia merely received funds from an escrow company because Stephen's bank account was closed. (Mot. 7.)

Furthermore, the Court considers the factors in 28 U.S.C. § 3304(b)(2). Despite Stephen's legal title to the real property, Cynthia, an insider, took possession of the sale proceeds and Stephen ultimately retained less than a third of the proceeds. (Stephen Mot. 11; Compl. ¶¶ 11, 12.) Though the transfer was disclosed, and Stephen deposited $100,000 with the court, Defendants sold the Al-Hil Property pending resolution of Stephen's criminal case. (Stephen Mot. 11; Compl. ¶¶ 9, 12.) Given the totality of the circumstances, the series of transactions in the Government's allegations plausibly demonstrate that Defendants made the transfers "with actual intent to hinder, delay, or defraud a creditor." *See United States v. LeBeau*, No. 17CV1046-GPC(WVG), 2017 WL 6270474, at *6 (S.D. Cal. Dec. 8, 2017) (finding the plaintiff alleged sufficient facts when it alleged two spouses transferred the property back and forth to each other without adequate consideration); *United States v. Crisp*, 190 F.R.D. 546, 548–555 (E.D. Cal. 1999) (finding the government alleged facts sufficient to

satisfy elements of 28 U.S.C. § 3304(b) by pleading that defendants' transfer of real property from two individuals to a limited partnership was fraudulent).

Furthermore, the Government alleged who transferred and received funds in what amount on which date. Therefore, Government plead with particularity the "who, what, when, when, where, and how" of the fraudulent activity and satisfied the heightened pleading standard. On motion to dismiss, the Court finds the Government sufficiently alleged a violation under 28 U.S.C. § 3304(b)(1)(A).

Accordingly, the Court **DENIES** the Stephen's Motion as to this claim.

*b. 28 U.S.C. § 3304(b)(1)(B)*

Stephen alleges that the Government provides no facts in its complaint that show Stephen sold the Al-Hil Property without receiving reasonably equivalent value in exchange for the transfer. The Government alleges that Stephen was the sole owner of the Al-Hil Property and took only $100,000 of the $394,560.97 net proceeds. The Government therefore sufficiently alleges that Stephen sold the Al-Hil Property without receiving equivalent value in exchange.

Furthermore, Stephen asserts that the Government's complaint fails to allege that Stephen took less value for his property intending to avoid his debts. Stephen asserts that he reasonably believed he would only owe $119,376.14 in restitution as that was total in losses listed in the indictment. (Mot. 10.) The Government contends that Stephen "believed, or reasonably should have believed, that he would incur debts beyond his ability to pay" since if convicted he would "likely owe restitution in excess of $500,000." (Compl. ¶¶ 9, 23.) However, even if Stephen reasonably believed he owed $119,376.14, Stephen violated 28 U.S.C. § 3304(b)(1)(B) because he only kept $100,000 from the sale of the Al-Hil Property and allowed his siblings to retain the balance of $294,560.97. (Mot. 11.) Therefore, the Government adequately alleges that Stephen violated 28 U.S.C. § 3304(b)(1)(B). On motion to dismiss, the Court finds the Government sufficiently alleged a violation under 28 U.S.C. § 3304(b)(1)(B).

Accordingly, the Court **DENIES** the Stephen's Motion as to this claim.

### 2. Defendant Joseph

Joseph's primary argument is that the Government's allegations are conclusory and fail to show how receiving proceeds in Cynthia's account amounted to fraudulent transfer. (Joseph Mot. 8.) However, as described above, the Government in its Complaint established a string of transactions that could plausibly establish a violation of the FDCPA. The scenario is not as Joseph alleges—that Cynthia merely received funds from an escrow company because Stephen's bank account was closed. (Joseph Mot. 7.)

Furthermore, Joseph asserts that the Government fails to allege a claim against him because he does not owe a debt to the Government. (Joseph Mot. 9.) Yet, the Government sufficiently pleads that Joseph received funds from a transfer that was fraudulent because Stephen, the debtor, took less than equivalent value of his Al-Hil Property and Joseph retained about a third of the proceeds from that sale. (Compl. ¶¶ 12–17.) Accordingly, Joseph, himself, need not owe a debt to the Government for it to pursue an FDCPA claim against him.

Accordingly, the Court **DENIES** the Joseph's Motion on this basis.

## D. Indispensable Party

Stephen and Joseph allege that by failing to join the escrow company that disbursed the funds into Cynthia's account, the Government failed to join an indispensable party. (Stephen Mot. 6; Joseph Mot. 6) Under Rule 19 section (a), the Court must first determine if the escrow company, the non-party or absentee, is a person required to be joined. *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). Only if the Court determines the absentee is required must the Court consider whether joinder is feasible. *Id*. An absentee is necessary either if the Court "cannot accord complete relief among the existing parties" or if the absentee "claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(A) & (a)(1)(B).

Here, Defendants are in complete possession of the net proceeds that the Government seeks. (Compl. ¶¶ 12–17.) Thus, despite Defendants' frustration that the escrow company was not joined, the Court can accord complete relief among the existing parties. *See Eldredge v. Carpenters 46 N. Cal. Ctys. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (applying "complete relief" only to "persons already parties, not as between a party and the absent person whose joinder is sought"); *Hoang v. Vinh Phat Supermarket, Inc.*, No. 2:13-cv-00724 WBS, 2013 WL 4095042, at *16 (E.D. Cal. Aug. 13, 2013) (finding that the court could accord complete relief between the named parties despite the individual defendants' frustration that other fellow shareholders were not joined in the suit).

Furthermore, since the escrow company relinquished the funds in question upon completion of the real property sale, the escrow company has no interest relating to the subject of the action. Moreover, the escrow company has not asserted any interest in the funds at issue. *See Soto v. Los Angeles Cty. Flood Control Dist.*, No.15-cv-787 FFM, 2016 WL 11265023, at *3 (C.D. Cal. May 24, 2016) (finding that where a party does not assert an interest relating to the subject of the action the subsection does not apply). Therefore, the escrow company is not a necessary party.[4]

Accordingly, the Court **DENIES** Defendants' Motions to Dismiss for failure to join an indispensable party.

---

[4] Since the Court does not find that the escrow company is a necessary party, the Court does not address whether joinder would be feasible.

## IV. CONCLUSION

For the reasons provided above, the Court **DENIES** Defendants' Motions. Within fourteen days from this Order, Defendant Stephen and Joseph must file an answer to the Complaint.

**IT IS SO ORDERED.**

October 25, 2019

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE